LEANDER PARROTT *vs.* THEODORE R. PLUNKETT & others.

Berkshire.    June 25, 1929. — June 27, 1929.

Present: RUGG, C.J., PIERCE, WAIT, SANDERSON, & FIELD, JJ.

*Elections.    Ballot.    Municipal Corporations,* Officers and agents.    *Mandamus.*

It *was stated* that a petition for a writ of mandamus is the appropriate method by which one should seek to have two of the selectmen of a town ordered to recognize the petitioner as the third selectman and to have another person ordered to cease pretending to be the third selectman.

In a town which previously had voted that one selectman should be elected annually for a term of three years, the warrant for the town meeting of a certain year called upon the voters to elect, among other officers, "one selectman for three years." Each of two candidates was nominated for that office for three years and each requested the voters to vote for him for that term. The official ballot prepared by the town clerk for the election was regular in form except that, through error of the printer, it contained, in conjunction with the names of each of such two candidates, the caption, "Selectman for One Year." Such error was not discovered until late in the afternoon of the day of voting. The candidate who received a majority of the votes contended that he had been elected selectman for three years; the other candidate contended that there had been no election. *Held,* that

(1) Since the only term for which the voters had power to choose a selectman was three years, the designation of the term on the ballot was unnecessary and might be treated as surplusage: the clerical error in the designation of the term was immaterial;

(2) The intention of the voters must be given effect in the circumstances;

(3) The candidate receiving a majority of the votes lawfully was elected selectman.

PETITION, filed in the Supreme Judicial Court for the county of Berkshire on May 13, 1929, described in the opinion.

The petition was heard by *Wait,* J., upon the pleadings and a case stated, and was reserved by his order for determination by the full court.

The case was submitted on briefs.

*C. H. Wright & H. L. Harrington,* for the petitioner.

*W. J. Donovan,* for the respondents Plunkett and another.

*E. K. McPeck & F. W. Cassidy,* for the respondent Groves.

RUGG, C.J.   This is a petition for a writ of mandamus. The petitioner seeks to compel recognition of himself as member of the board of selectmen of the town of Adams by the two undoubted members of that board and to stop the third respondent from pretending to be such member.   The case was reserved for the determination of the full court. The material facts are these: The town of Adams, in 1891, accepted the provisions of law providing for the printing and distribution of ballots for town elections at public expense. In November, 1894, the town voted that at its next annual meeting one selectman be chosen for one year, one for two years and one for three years, and thereafter at each annual meeting one for three years.   At the annual meeting in 1895, and at each succeeding annual meeting including that for 1928, the town has elected one selectman for the term of three years in compliance with this vote.   At the annual town meeting of 1926, the respondent Groves was elected a selectman for three years; he qualified and served as such selectman and still claims to hold that office as a holdover because of alleged failure to elect his successor in 1929.   The respondents Plunkett and Davis have been duly elected and qualified as selectmen of the town and their terms have not expired.   The official ballots used at the annual town meetings since 1896 up to and including 1928 have been in standard form and contained the following: "Selectman for Three Years   Mark One."   Underneath this heading were listed the names of candidates and their party designations.   The warrant for the annual town meeting in 1929 was in proper form and amongst other matters called upon the voters "To bring in their votes on one ballot for the following officers; . . . one Selectman for three years" and for other named town officers.   The official ballot furnished for that meeting was in usual and regular form except that it contained this:

| "Selectman for One Year | · | Mark ONE |
|---|---|---|
| ROBERT GROVES   Ind. Nom. Papers. Dem. | | |
| LEANDER PARROTT   Ind. Nom. Papers Rep." | · | |
| | · | |

The record of the annual town meeting for 1929 shows that the petitioner Parrott received a majority of all the ballots cast for selectman, and that the printing on the official ballot of the term "one year" instead of "three years" was an error.   The petitioner has duly taken the oath of office as selectman.   "It is agreed by all parties to these proceedings; that the warrant, calling said annual town meeting for 1929, was, among other things, to elect a selectman for the term of three years; that the town clerk submitted a form to the printer of an official ballot signed by her, on which form the term of office for selectman was designated as three years; that, through error of said printer, the official ballot, was, as used by the voters in said election, printed 'Selectman for one year,' . . . This error was not discovered by the town officials until late in the afternoon of the day of voting. That each candidate, by their political advertisement, asked to be elected for the term of three years, and, at the caucuses and the nomination papers each candidate was nominated for said office for the term of three years.   That each candidate and each political party, by political advertising, circulated among the voters and also published in the North Adams Transcript on the evening of March first and March second, prior to said election, respectively asked the voters of Adams to vote for their respective candidates 'for Selectman for the term of three years.'"

In these circumstances the petitioner contends that he has been elected selectman, at the annual town meeting for 1929. The respondent Groves contends that there was no election of a selectman at that meeting and that hence he holds over as selectman in default of such election; and the two respond-

ents, who confessedly are selectmen, admit both the petitioner and Groves to their meetings but, not knowing which of them is in fact a selectman, refuse to recognize either as to matters requiring votes or signatures of the selectmen, and make no argument on the merits but desire the controversy settled.

Mandamus is the appropriate remedy. No question has been raised on this point. *Luce* v. *Dukes County, Board of Examiners*, 153 Mass. 108, 111. *Keough* v. *Aldermen of Holyoke*, 156 Mass. 403. *Sevigny* v. *Russell*, 260 Mass. 294.

The purpose of election laws is to afford opportunity for the orderly expression of preferences by the voters for those to be elected to public office, and not to thwart or suppress such orderly expression. The election laws of this Commonwealth providing for official ballots have uniformly been interpreted to the end that the will of the voter if ascertainable is to be given effect even though there may have been omission to observe some subsidiary and directory provisions of the law. In *O'Connell* v. *Mathews*, 177 Mass. 518, ballots prepared and delivered by the designated public officers and cast by voters were received and counted which did not have on the back and outside of them when folded the printed words "Official Ballot of" followed by the designation of the voting precinct, the date of the election and a facsimile of the signature of the city clerk as required by the election law. There was a further provision of that law (St. 1898, c. 548, § 230) to the effect that no ballot without the required official indorsement should be deposited in the ballot box. In passing upon proceedings to challenge the validity of those ballots actually deposited by voters in the ballot box, it was held that they were rightly counted because otherwise the voter would be disfranchised and that this "result is not to be admitted without very clear words, and such words would raise a constitutional question which we do not decide." In *Wheeler* v. *Carter*, 180 Mass. 382, there was under review an election in a town which had accepted the provisions of law requiring members of the board of selectmen to be elected for three years. The warrant for that election contained the article "to choose all necessary town officers for the ensuing year." It was held that the article "To choose officers for

the ensuing year" meant "to choose them according to the law in force in that town. This law required that the selectmen chosen for the ensuing year should be elected for a term of three years." The article was held to be sufficient and the selectman receiving a majority of the votes was held to be elected for a term of three years. In *Ray* v. *Registrars of Voters of Ashland,* 221 Mass. 223, question arose as to the validity of an election of a selectman in a town where the term was three years although no term was printed on the official ballot. A candidate whose name was not on the official ballot ran for the office and numerous voters at the election used pasters which they attached to the official ballot. The printing upon these pasters bore the name of the candidate in print but not in the kind or size of letters required by the statute. It was expressly found that the name on the pasters was not in conformity with the statute. The pasters also bore the words "three years," although the official ballot bore no such designation and it was not required. It was held, however, that although these pasters were provided by the voter himself, and not by the authorized public officials, and failed to comply with the requirements of the statute, nevertheless they ought to be counted because the ballots as used fairly and unmistakably expressed the voters' purpose. In *Beauchemin* v. *Flagg,* 229 Mass. 23, where the validity of ballots upon which the voters had marked a cross against the name of a certain candidate between the square and the name but not in the square on the official ballot, it was held that these votes ought to be counted on the ground that the ballots upon inspection indicated with reasonable certainty the candidate for whom the electors intended to vote and that the votes should be counted in accordance with that intent since the voters had substantially complied with the requisites of the election statute. Cases have arisen where there has been failure to comply with vital requirements of the election law and such ballots have not been counted. See for example *Flanders* v. *Roberts,* 182 Mass. 524; *Brewster* v. *Sherman,* 195 Mass. 222; *Andrews* v. *Registrars of Voters of Easton,* 246 Mass. 572; *Madden* v. *Election Commissioners of Boston,* 251 Mass. 95. In *O'Brien*

*v. Election Commissioners of Boston,* 257 Mass. 332, 338, it was said: "The cardinal rule for guidance of election officers and courts in cases of this nature is that if the intent of the voter can be determined with reasonable certainty from an inspection of the ballot, in the light of the generally known conditions attendant upon the election, effect must be given to that intent and the vote counted in accordance therewith, provided the voter has substantially complied with the requisites of the election law; if that intent cannot thus be fairly and satisfactorily ascertained, the ballot cannot rightly be counted." The right to vote is a sacred privilege. Every rational intendment is to be made in favor of its rightful exercise. Unless in contravention of some positive and essential mandate of the statute or of the law, the intention of the voter must be given effect. That principle runs through our decisions from first to last. If that principle be regarded, as it ought to be, rather than casual remarks, colored as they generally are by the circumstances of particular cases, all the authorities are consistent and harmonious.

In the case at bar the only term for which a selectman could have been elected under the law at the annual town meeting in Adams in 1929 was for a term of three years. The warrant for that town meeting correctly stated that it was to be held for the election of one selectman for the term of three years. Thus the statute and the warrant declared and bounded the power of the voter on that subject. The ballot was prepared under the authority of law by public officers and furnished to the voters. They could use no other ballots. The intention of the voter must be expressed upon the piece of paper prepared and handed to him by public officials. There was a clerical error on that ballot. It was unnecessary that the term of office for the selectman should be printed on the ballot. If nothing as to the term had been upon the ballot the statute and the warrant would have made plain that the term for which the selectman was to be elected was three years. The voter was not responsible for the fact that the official ballot contained this clerical error. The clerical error stating the term to be one year could in

nowise be given effect. The selectman in the circumstances disclosed could not have been elected for the term of one year. This was not an error in the name of the candidate or in the description of the office. It follows that this clerical error concerned an immaterial and subsidiary point and did not affect the substantial factors of the election; those were fixed by the statute and by the warrant. To adopt the contention of the respondent Groves would be to annul the intention of all the voters on account of a clerical error for which they were in no degree responsible. That clerical error would not naturally be seen or comprehended by the ordinary voter in the brief time in which as a practical matter each voter is expected to be in the voting booth. Apparently this clerical error was observed by only one of the more than three thousand voters who cast ballots at the annual meeting of 1929 in Adams. The specimen ballot publicly posted as required by law, important as it is and may be under other conditions, would not commonly be inspected by voters for the detection of a clerical error of this nature. Voters are not required to make a critical examination of an official ballot for the discovery of clerical errors. They have a right to accept the official ballot handed them as being correct in form and furnishing appropriate means for expressing their intention by merely making the cross in the blanks designed to manifest their purpose. The means to correct such clerical error as is here disclosed, without at the same time violating some other provision of the statutes as to elections, would not readily occur to the ordinary voter and might involve difficult questions of law. In these circumstances the clerical error on the official ballot may be treated as surplusage. Omitting the words constituting the clerical error, the ballots were in proper form. It is not necessary to consider whether clerical errors may exist of such a nature as to be fatal to a particular election.

There is nothing at variance with this conclusion in the decision in *Attorney General* v. *Hutchinson*, 185 Mass. 85. That case is obscurely reported. An examination of the original papers shows that in the town of Lexington, where that controversy arose, official ballots were used in elections

of town officers.  In January, 1900, the town adopted the provisions of statute (which became operative at the annual town meeting in March, 1900) requiring the election of three selectmen, one for a term of one year, one for a term of two years and one for a term of three years.  At the annual meeting in March, 1900, three selectmen were elected, one for the term of one year, one for the term of two years and one for the term of three years.  In January, 1901, at a town meeting held more than thirty days prior to the annual town meeting for that year (St. 1898, c. 548, §§ 335, 336, 361) upon a sufficient warrant, it was voted that at the annual town meeting in March, 1901, one selectman be elected for one year; in March, 1902, two selectmen for one year, and in 1903, three selectmen for one year.  Thus, on the face of the records of the town, it had been voted to return to the former system of electing selectmen for terms of one year. At the annual meeting in 1901, one Hutchinson was declared elected a selectman for a term of one year but, controversy and litigation having arisen, he resigned and thereafter at a special meeting held in May, 1901, was declared elected selectman for a term expiring in March, 1904.  At the annual town meeting in 1902, one Taylor was declared elected for a term of three years.  At the annual town meeting in 1903, one Spaulding was declared elected for a term of three years.  All three of these last described elections were held and declared pursuant to a warrant for the town meeting calling for election of selectmen for the stated terms.  In March, 1903, shortly after the annual town meeting, information in the nature of a *quo warranto* was filed by the Attorney General against Hutchinson, Taylor and Spaulding. The main point there in controversy was whether the vote of the town at the meeting of January, 1901, to give up the three-year term for selectmen and to return to the one-year term was valid.  That is the only question discussed in the opinion.  The case decided that that vote was valid, and that the election of each respondent at a town meeting held upon a warrant calling for an election on the basis of a three-year term for selectmen not being in conformity to the governing statute, in view of the vote of the town, was invalid.  No

question was considered by the court in that case such as here is presented. We do not discuss the merits of that decision but accept its full value, and are of opinion that it has no bearing on the case at bar.

The conclusion follows that under well settled principles of election law the petitioner was lawfully elected selectman of the town of Adams at the annual town meeting of 1929 for the term of three years.

> *Peremptory writ of mandamus to issue requiring the respondent Groves to desist from pretending to be selectman and requiring the other two respondents to recognize the petitioner as selectman.*