JOHN C. HALL *vs.* RALPH P. BARTON & others.

Suffolk. April 5, 1935. — April 29, 1935.

Present: RUGG, C.J., CROSBY, PIERCE, LUMMUS, & QUA, JJ.

*Elections. Evidence,* Presumptions and burden of proof.

A ballot cast in an election, upon which the voter has placed an identifying or distinguishing mark in violation of G. L. (Ter. Ed.) c. 54, § 80; c. 56, § 31, cannot be counted.

The presumption of innocence and legality applies in the determination of the question whether a ballot cast at an election contains an identifying or distinguishing mark in violation of G. L. (Ter. Ed.) c. 54, § 80; c. 56, § 31.

A mark upon a ballot cast at an election, to be an identifying or distinguishing mark within the meaning of G. L. (Ter. Ed.) c. 54, § 80; c. 56, § 31, must be made on purpose, must be such in fact, and must be intended to be such.

Whether a mark on a ballot cast at an election is intended by the voter to be an identifying or distinguishing mark within the meaning of G. L. (Ter. Ed.) c. 54, § 80; c. 56, § 31, is commonly a question of fact; and there was no violation of §§ 80, 31, where it was found as a fact that certain words were irregularly written on a ballot without intent of the voter that thereby it should be identified or distinguished as his.

PETITION for a writ of mandamus, filed in the Supreme Judicial Court for the county of Suffolk on March 18, 1935.

The case was heard by *Lummus,* J. Material facts are stated in the opinion. The single justice reported the case for determination by the full court.

*H. Hormel,* for the petitioner.

*J. T. Batchelder,* for the respondents.

RUGG, C.J. This is a petition for a writ of mandamus to compel the registrars of voters of Sudbury, hereafter called

respondents, to give to the petitioner a certificate of election as a selectman for the term of three years. The rival candidate for that office, Howard M. Goodnow, has been permitted to intervene as a party respondent. At the election on March 4, 1935, Goodnow was declared elected. Upon a recount, the respondents decided that each candidate had received the same number of votes and that neither was elected. The only question to be decided on this record relates to a single ballot which the respondents refused to count. If it ought to have been counted, the action of the respondents was erroneous and the writ must issue.

The petition was heard by a single justice, who inspected the disputed ballot. Official ballots as defined in G. L. (Ter. Ed.) c. 50, § 1, were used at the election. The ballots were arranged in the form usual in this Commonwealth; the names of candidates were grouped under the titles of the several offices with a small square to the right of each name for the making of a cross to indicate the candidate voted for. One part of the ballot was in this form: "Selectmen, for three years, vote for one." The names of three candidates were arranged in alphabetical order and the voter marked a cross in the square opposite the name of the petitioner. He also marked in the usual way the ballot indicating his choice of candidates for ten other offices. There was on the ballot the name of but one candidate for town clerk. No mark was made in the square opposite that name, but in the space below the name of the candidate, left blank to permit the writing of the name of a different candidate, the voter wrote: "Anyone else will do," and made a cross in the square opposite that writing. The name of one candidate for assessor was printed on the ballot and in the blank space below that name the voter wrote "Mr. Punk" and placed a mark in the square opposite that writing. The names of three candidates for constable were printed with the instruction "Vote for three." The voter marked in the proper square his preference for the first two candidates, but opposite the name of the third candidate he wrote "Nix" and made no mark whatever in the square opposite that name.

The single justice found, in addition to the facts above stated, that the voter did not place any marks on the ballot with the intention that it should be identified as his, that the unusual marks described made it easier to identify the ballot than it would have been if the voter had expressed his choice by crosses in the squares without more, but that it was no more easy to identify than it would have been if the voter had exercised his privilege to write by his own hand the name of some other candidate and to vote for that candidate. Upon the facts as thus found the case was reported for our determination.

The findings of fact must be accepted as true since the evidence is not reported.

The pertinent provisions of statutes are these: G. L. (Ter. Ed.) c. 54, § 80: "Except as authorized by this chapter, no voter, election officer or other person shall place on a ballot any mark by which it may be identified; nor shall any person place a mark against any name upon a ballot not cast by himself"; § 106: "If the use of a state ballot box is required, no ballot shall be counted unless it has been deposited in and cancelled by such ballot box, or has been otherwise deposited in accordance with section sixty-six. Only official ballots shall be counted in any election for which they are provided. If a voter marks more names than there are persons to be elected to an office, or if his choice cannot be determined, his ballot shall not be counted for such office. Ballots cast but not counted shall be marked 'defective' on the outside thereof, and shall be preserved like other ballots"; c. 56, § 31: "Whoever, at a primary, caucus or election, places any distinguishing mark upon his ballot, or makes a false statement as to his ability to mark his ballot, or allows the marking of his ballot to be seen by any person for any purpose not authorized by law, or gives a false answer to or makes a false oath before a presiding officer, shall be punished by imprisonment for not more than six months or by a fine of not more than one hundred dollars."

The only statutory provision forbidding the counting of a ballot actually deposited by the voter in the ballot box

is in said § 106, to the effect that a ballot containing more names than there are persons to be elected, or a ballot not disclosing the choice of a candidate, shall not be counted. *Beauchemin* v. *Flagg*, 229 Mass. 23, 25. It is manifest that the ballot in question does not fall within the terms of this interdiction. No more names were marked on the ballot than there were officers to be elected. There is no doubt as to the candidate for selectman for whom the ballot was intended to be cast. There has been no failure on the part of the voter to express his preferences. *O'Brien* v. *Election Commissioners of Boston*, 257 Mass. 332, 338. *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 280. There is no express prohibition against counting a ballot cast in violation of said § 80 in that the voter has placed upon his ballot a mark by which it may be identified and has thereby committed the crime denounced by said § 31 of placing a distinguishing mark upon his ballot. The purpose of these two sections is to preserve the secrecy of voting and to make difficult the corruption of voters. To count ballots cast in direct contravention of these underlying principles of the election law would tend to frustrate the aims designed to be accomplished by it. Ballots shown to be thus cast are illegal. To count such ballots would tend to break down the barriers against bribery of voters. The purpose of elections is to obtain a fair expression of the preferences of the qualified voters in accordance with established law. Every implication of the statutes as to the conduct of elections is that ballots illegally cast because containing identifying marks contrary to the mandate of said §§ 80 and 31 should not be countenanced by being counted. Only by excluding them from consideration can the secrecy of elections be promoted and the commission of the offence condemned by the statute be prevented from polluting elections. *Whittam* v. *Zahorik*, 91 Iowa, 23, 35–36. *Van Winkle* v. *Crabtree*, 34 Ore. 462, 479–480. *State* v. *Fawcett*, 17 Wash. 188, 193–194. See to the contrary *Doll* v. *Bender*, 55 W. Va. 404, 409–410.

The precise point remaining for decision is whether as matter of law the marks upon this ballot in the light of the

facts found by the single justice rendered the ballot illegal under the governing statutes. Every presumption is in favor of innocency and legality. *Duffy* v. *Treasurer &amp; Receiver General*, 234 Mass. 42, 50. *Janevesian* v. *Esa*, 274 Mass. 231, 233. This principle applies to the counting of ballots challenged as having been cast in violation of the prohibition of the statute against containing identifying or distinctive marks. *Fullarton* v. *McCaffrey*, 177 Iowa, 64, 72. *Murray* v. *Waite*, 113 Maine, 485, 491. *Brereton* v. *Canvassers of Warwick*, 55 R. I. 23, 36–37. If the intent of the voter can be ascertained, the general purpose of election laws is to give effect to that intent by counting the ballot, unless prevented by some positive rule of law. Many provisions of statute may be treated as directory in order to effectuate this general purpose. *Ray* v. *Registrars of Voters of Ashland*, 221 Mass. 223, 225. *Clancy* v. *Wallace*, 288 Mass. 557. The statute contains no definition of an identifying or distinguishing mark upon a ballot. That must be determined as to each case by considering its facts in the light of the words and general design of the election law. An identifying or distinguishing mark must be such in fact, made on purpose and not accidentally, and intended according to its appearance, place on the ballot and all attendant conditions to be a distinguishing mark. *Donlan* v. *Cooke*, 212 Iowa, 771, 775–776. *Libby* v. *English*, 110 Maine, 449, 454. Whether that which is on a particular ballot was intended as a means of identifying it must be ascertained from all the circumstances including its adaptability, its relation to other markings on the ballot, and similarity to other ballots. It has been held that all ballots properly marked should be counted although containing casual, accidental or unnecessary marks, provided the same do not appear to be made fraudulently or with criminal intent. *State* v. *Walsh*, 62 Conn. 260, 287. *Fullarton* v. *McCaffrey*, 177 Iowa, 64, 71–72. *Murray* v. *Waite*, 113 Maine, 485, 491. *Brereton* v. *Canvassers of Warwick*, 55 R. I. 23, 36–37. The words written on this ballot appear not to have been made in an attempt to indicate the candidate to be

voted for.  They were not placed upon it inadvertently
or accidentally.  They must have been written by deliber-
ate purpose.  They are of a nature which conceivably
might have been agreed upon between the voter and
another person as distinguishing this from other ballots
and identifying it as the one cast by the voter.  But, in
addition to these features, there must be the further factor
that whatever appears in writing or by device was intended
to be a distinguishing mark.  See *Bartlett* v. *McIntire*, 108
Maine, 161, 171; *Spaulding* v. *Romack*, 185 Ind. 105,
112–113.

Whether irregular markings on a ballot import a dis-
honest purpose commonly is a question of fact to be
decided in connection with all the circumstances.  Hand-
writing alone might be sufficiently distinctive in certain
conditions, although if the name of a candidate is written
in a blank space as expressly permitted by G. L. (Ter. Ed.)
c. 54, § 42, it could not be an identifying mark within the
meaning of said §§ 80 and 31.  *Ray* v. *Registrars of Voters
of Ashland*, 221 Mass. 223, 225.  The finding of the single
justice is that the writings in the case at bar were not made
with an intent to identify or to distinguish the ballot of
the voter.  That finding must be accepted as final and
cannot be reviewed or revised by us.  *Andrews* v. *Registrars
of Voters of Easton*, 246 Mass. 572, 576.  *Bianco* v. *Ashley*,
284 Mass. 20, 26.  The words written on the ballot here
in question disclose a frivolous, puerile, or eccentric dis-
position; they manifest a tendency to trifle with one of the
most important duties of citizenship.  No other ballot, so
far as appears, bore any markings or writings similar in
kind or in class.  However strong the circumstances might
seem to a fact finding tribunal, they might be thought to
indicate freakishness rather than knavishness on the part
of the voter.  In our opinion they cannot quite be said,
as matter of law, to import a dishonest purpose.  There
are decisions in other jurisdictions doubtless going some-
what further in condemning ballots irregularly marked.
For example, it was said in *Stevenson* v. *Baker*, 347 Ill. 304,
318: "Any deliberate marking of a ballot by a voter that

is not made in an attempt to indicate his choice of candidates, and which is also effective as a mark by which his ballot may be identified, should be considered as a distinguishing mark." *James* v. *Stern,* 44 Nev. 430, 434. *Elwell* v. *Comstock,* 99 Minn. 261, 270–271. See cases collected in 20 C. J., pages 162–168. It is not necessary to review these and other decisions because of the varying statutory provisions in the different States.

The case at bar is very close to the line. Doubtless, a slight element might have resulted in a different finding of facts. But our conclusion is that the ballot ought to be counted for the petitioner and that certificate of election ought to issue to him. This result seems in harmony with the general trend of our decisions as to the counting of ballots. *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 277–278. *Parrott* v. *Plunkett,* 268 Mass. 202, and cases there reviewed.

*Writ of mandamus to issue.*