JOHN F. HAGGERTY *vs.* GLOBE NEWSPAPER COMPANY.

Suffolk. March 4, 1981. — April 17, 1981.

Present: HENNESSEY, C.J., BRAUCHER, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Civil,* Motion to dismiss. *Privacy.*

Allegations in a complaint that, shortly after the plaintiff was appointed
Commissioner of the Metropolitan District Commission, the defend-
ant newspaper published a series of articles concerning the plaintiff's
activities some ten years earlier, that the newspaper accounts were
based on or contained unsubstantiated and uncorroborated "raw in-
vestigative material," and that the publication of the unsubstantiated,
ten year old material was reckless and unwarranted were sufficient to
state a cause of action for violation of the plaintiff's statutory right of
privacy under G. L. c. 214, § 1B. [407-409]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 6, 1979.

The case was heard by *Adams, J.,* on a motion to dismiss.

After review was sought in the Appeals Court, the Su-
preme Judicial Court ordered direct appellate review on its
own initiative.

*Robert Emmet Dinsmore (Clifford S. Hochman* with
him) for the plaintiff.

*James F. McHugh* for the defendant.

NOLAN, J. The judge erred in allowing the defendant's
motion to dismiss under Mass. R. Civ. P. 12 (*b*) (6), 365
Mass. 754 (1974).

The complaint avers that the plaintiff was appointed
Commissioner of the Metropolitan District Commission
(M.D.C.) by Governor Edward J. King on the day after the
latter's inauguration in January, 1979. As a result of the
published materials which are under review in this case, he
was forced to resign. Annexed to and made a part of the
complaint are several articles published by the defendant in

editions dated February 24, 25, 26, 27 and March 5, 1979.
A précis of these articles would reveal the following allega-
tions which represent the raw material of this litigation.
The immediate sources of this information were files in the
M.D.C. and in the Attorney General's office. Earlier in his
public service, the plaintiff had filled the position of associ-
ate commissioner of the M.D.C., a part-time billet, from
1960 to 1975. Certain dissident members of Local 88, the
Compressed Air and Tunnel Workers, AFL-CIO, in 1969
complained that the plaintiff, who was president of the
union at the time, was unfair to organized labor. He re-
signed the presidency in August, 1969. These members
charged the plaintiff with conflict of interest, payroll pad-
ding, misuse of union funds and mismanagement. Admit-
tedly, these charges were never proved, though the then At-
torney General conducted an investigation. The defendant
also revealed in these articles the allegedly close alliance of
the plaintiff to one Thomas DiSilva, named by Governor
King to the position of associate commissioner of the
M.D.C. on February 9, 1979, on the strength of the plain-
tiff's recommendation. DiSilva was charged by the union
dissidents with being a straw for the plaintiff in permitting
a crane owned by the plaintiff to be leased and used on
M.D.C. projects. The articles linked a business associate of
DiSilva with organized crime and asserted that the leader of
organized crime in New England was an investor in a corpo-
ration of which DiSilva was a principal. Accompanying
one by-line was a photograph of certain union members
picketing M.D.C. headquarters in 1969, and carrying sand-
wich boards protesting that the plaintiff was unfair to or-
ganized labor.

Additionally, there was embroidered into some of the ar-
ticles on the plaintiff's earlier tenure at the M.D.C. an ac-
count of the unsolved 1970 murder of one of the dissident
union members.

The plaintiff's complaint correctly alleges that these
newspaper accounts were based on or contained unsubstan-
tiated and uncorroborated "raw investigative materials."

This is an accurate description of their origin, derived as they were from interviews and tape recordings made of the interviews of the dissident union members by police detectives.

In evaluating the judge's action we apply the settled law that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957), quoted with approval and adopted in *Nader* v. *Citron,* 372 Mass. 96, 98 (1977). *Longever* v. *Revere Copper & Brass Inc.,* 381 Mass. 221, 222 n.1 (1980). The instant complaint expressly bids for recognition of sufficient facts to make out a violation of the plaintiff's statutory right of privacy under G. L. c. 214, § 1B. It just barely succeeds.

The journalism of which the plaintiff complains and which is appended to his complaint speaks more forcefully than the averments of his complaint. Section 1B recognizes "a right against unreasonable, substantial or serious interference with [one's] privacy." While it is perfectly clear that the plaintiff was a public figure at the time of the defendant's publications, the plaintiff avers, although obliquely, the reckless and unwarranted publication of this unsubstantiated, ten year old material. On this record and at this threshold stage of the case, it is unwise to give a complete gloss to § 1B as it may or may not protect a public figure's right to privacy, require malice, permit truth as a defense, demand an averment of falsehood, or implicate other facets of the current jurisprudence on defamation and "false light" invasion of privacy. See *Cantrell* v. *Forest City Publishing Co.,* 419 U.S. 245, 249 (1974). It is true, as the defendant argues, that this court as well as the Appeals Court has spoken of § 1B in earlier cases,[1] but we have not

---

[1] See *Tropeano* v. *Atlantic Monthly Co.,* 379 Mass. 745, 748 (1980); *New Bedford Standard Times Publishing Co.* v. *Clerk of the Third Dist. Court of Bristol,* 377 Mass. 404, 414-415 (1979); *Attorney Gen.* v. *School Comm. of Northampton,* 375 Mass. 127 (1978); *Hastings & Sons Publishing Co.* v. *City Treasurer of Lynn,* 374 Mass. 812, 817-820 (1978); *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,* 374 Mass.

yet been confronted with the peculiarities of the instant case.

The indulgent reading which we are obliged to give the complaint, see *Whitinsville Plaza, Inc.* v. *Kotseas,* 378 Mass. 85, 88-89 (1979); *Charbonnier* v. *Amico,* 367 Mass. 146, 152-153 (1975), leads us to conclude that the plaintiff has alleged a set of facts for which some form of relief may be appropriate. *Jessie* v. *Boynton,* 372 Mass. 293, 302-303 (1977).

*Judgment reversed.*

640, 657 n.11 (1978); *Broderick* v. *Police Comm'r of Boston,* 368 Mass. 33, 44 (1975), cert. denied, 423 U.S. 1048 (1976); *Cefalu* v. *Globe Newspaper Co.,* 8 Mass. App. Ct. 71, 77-78 (1979), appeal dismissed, 444 U.S. 1060 (1980); *Boston* v. *Ditson,* 4 Mass. App. Ct. 323, 330 n.8 (1976), cert. denied, 429 U.S. 1057 (1977).