MAYRA SANTANA & others[1] *vs.* REGISTRARS OF VOTERS
OF WORCESTER & another.[2]

Worcester. May 4, 1981. — September 1, 1981.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Civil,* Dismissal, Declaratory proceeding. *Elections. Civil Rights. Moot Question. Jurisdiction,* Declaratory relief, Justiciable question. *Administrative Law,* Exhaustion of remedies.

A complaint alleging that a city's registrars of voters had failed to comply with G. L. c. 51, § 10A and § 59, that the violations were committed in bad faith and in disregard of the plaintiffs' rights, and that the registrars thereby caused the plaintiffs wrongfully to be denied their right to vote adequately stated a claim for damages under both Massachusetts law [490-492] and 42 U. S. C. § 1983 (1976) [492-493] and constituted an actual controversy for purposes of declaratory relief [493].

An action in which the plaintiffs claimed that their names were erroneously omitted from a city's voting list because the registrars of voters had failed to comply with certain State election laws was not rendered moot by the fact that two of the named plaintiffs had reregistered to vote after commencing the litigation nor did their refusal to reregister prior to commencing the litigation constitute a failure to exhaust an administrative remedy. [493-494]

CIVIL ACTION commenced in the Superior Court Department on July 29, 1980.

The case was heard by *O'Connor,* J., on a motion to dismiss.

---

[1] The plaintiff Santana is joined by Rosa Maldonado and Jeffrey Jenkins as named plaintiffs. They sue on their own behalf and on behalf of all persons similarly situated. See note 3, *infra.*

[2] The defendants John W. Spillane, Robert J. O'Keefe, Robert P. Reidy, and Joseph W. McDonough are sued both individually and in their official capacity as registrars of voters of the city of Worcester. The city of Worcester is also a party defendant.

The Supreme Judicial Court granted a request for direct appellate review.

*Hal R. Lieberman (John Reinstein* with him) for the plaintiffs.

*William F. Scannell, Jr.,* Assistant City Solicitor, for the defendants.

*David E. Sullivan,* for Secretary of the Commonwealth, amicus curiae, submitted a brief.

NOLAN, J.  This case reviews a Superior Court order dismissing an action brought by three Worcester voters on behalf of themselves and a class of others similarly situated,[3] seeking legal and equitable relief against the city of Worcester and its registrars of voters (registrars).  We hold that the action was improperly dismissed, and we reverse.

The plaintiffs alleged that the defendants failed to comply with certain mandatory State election laws.  Specifically, the plaintiffs assert that G. L. c. 51, § 10A, obligates the registrars to collect the names of residents of multidwelling units from owners of such units for the purpose of compiling the annual street listing.  Additionally, the plaintiffs contend that under G. L. c. 51, § 59, a person whose name does not appear on a voting list may vote by certificate at the polling place if his right to vote can be ascertained. Alleging that the defendants did not comply with these statutory requirements, the plaintiffs claim they were improperly removed from the city's voting lists, and unlawfully deprived of their right to vote, in violation of Part I, art. 9, of the Massachusetts Constitution and the due process clause

---

[3] The class action allegations listed as members of the class persons similarly situated in two subclasses: (1) all residents of the city of Worcester whose names have not been and are not being included in voting lists due to the failure of the defendants to secure lists of residents from owners of multidwelling units, as required by G. L. c. 51, § 10A; and (2) all residents of the city of Worcester who have registered to vote but who have been and are being denied the right to vote on election day by the defendants' failure to permit voting by certificate in accordance with G. L. c. 51, § 59.  Each of the named plaintiffs is a member of both subclasses.  The Superior Court judge dismissed the action prior to hearing the plaintiffs' motion for class certification.

of the Fourteenth Amendment to the United States Constitution.

The plaintiffs alleged facts as follows. Each of the named plaintiffs — Mayra Santana, Rosa Maldonado, and Jeffrey Jenkins — is a resident of a multidwelling unit in the city of Worcester. Each one registered to vote in Worcester, and each one continues to live at the address given at the time of registration. Both Santana and Maldonado registered to vote in Worcester in 1977. Neither one received notice that she was not currently registered to vote.[4] When each person went to her local polling place to vote in the March 4, 1980, presidential primary election, she was told by an official that her name was not on the voting list, that she would not be allowed to vote, and that she would have to register at city hall in order to vote in future elections. In neither case did the official ask the voter to present current identification. The official at Santana's voting place did communicate with the registrars concerning her right to vote,[5] and was informed that she was not so entitled. As a result, neither Santana nor Maldonado voted in the election.

The third named plaintiff, Jeffrey Jenkins, registered to vote in 1975 and voted in elections in 1975 and 1977. When he went to his local polling place to vote in the November 6, 1979, local election, he was told by an official that his name was not on the voting list, that he would not be allowed to vote, and that he would have to go to city hall for further assistance or information. He had received no notice that he had been removed from the voting list. At no time did the official ask Jenkins to present current identification or attempt to communicate with the registrars concerning his right to vote.

[4] Santana stated that a census taker had come to her apartment on several occasions prior to March 4, 1980. Maldonado stated that, to her knowledge, no census taker had visited her apartment prior to March 4, 1980. The third named plaintiff, Jenkins, stated that although a census taker visited his home in early 1978, no census taker called when he was home in 1979.

[5] Maldonado stated that, to the best of her recollection, the official at her polling place did not attempt to communicate with the registrars concerning her right to vote.

Furthermore, Jenkins went to the office of the registrars at city hall that same day. After a colloquy with the clerk, in which Jenkins indicated that he had not moved since his original registration, that he had not received any "drop" notice, and insisted on his right to vote in the current election, he was escorted from city hall by a security guard summoned by the clerk. Consequently, Jenkins did not vote in the election.

The defendants responded to the plaintiffs' complaint by filing a motion to dismiss, accompanied by two affidavits from one of the defendants, Robert J. O'Keefe, clerk of the board of registrars for the city of Worcester. The affidavits stated, inter alia, that, prior to instituting the action, plaintiffs' attorney had refused to disclose to the registrars the names of persons allegedly dropped from the voting list. Additionally, one of the affidavits stated that the plaintiffs, Santana and Maldonado, had registered since the last election. Accordingly, in support of their motion to dismiss, the defendants asserted mootness with respect to the claims of the plaintiffs who had reregistered and failure to exhaust administrative remedies as to the third plaintiff.

The Superior Court judge granted the defendants' motion to dismiss, treating it as one for summary judgment.[6] He found that the plaintiffs had not asserted a valid claim for compensatory or punitive damages. Additionally, he held that the complaint did not set forth an "actual controversy." We granted direct appellate review.[7]

1. *Motion to dismiss.* The judge erred in granting the defendants' motion to dismiss the complaint. The rule in

---

[6] While the motion to dismiss was pending, the plaintiffs deposed the defendant O'Keefe, and filed motions for class certification and a preliminary injunction, together with various supporting affidavits.

[7] A single justice of the Appeals Court granted the plaintiffs' motion for relief pending appeal. The order provisionally certified the plaintiff class for purposes of relief pending appeal, required that the defendants adopt procedures in accordance with the provisions of G. L. c. 51, § 59, if they had not already done so, and required that the defendants allow the plaintiff Jenkins to vote in the September 16, 1980, primary election, but that his ballot be segregated pending final determination of the case.

appraising the sufficiency of a complaint is that it "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," taking all of its allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Nader* v. *Citron,* 372 Mass. 96, 98 (1977), quoting from *Conley* v. *Gibson,* 355 U.S. 41, 45-46 (1957). See *Haggerty* v. *Globe Newspaper Co.,* 383 Mass. 406, 408 (1981). A complaint is sufficient "if it appears that the plaintiff may be entitled to any form of relief, even though the particular relief he has demanded and the theory on which he seems to rely may not be appropriate." *Nader* v. *Citron, supra* at 104.

The complaint in these cases meets these minimal requirements. The plaintiffs alleged that the defendants have violated two Massachusetts election laws, that these violations were committed in bad faith and in disregard of the plaintiffs' rights, and that the defendants thereby caused the plaintiffs wrongfully to be denied their right to vote. These allegations adequately state a claim for damages.

Without indulging in premature analysis, we note that the plain language of G. L. c. 51, §§ 10A & 59, as well as the regulation promulgated by the Secretary of the Commonwealth under authority of G. L. c. 54, § 37, construing § 59, support the plaintiffs' interpretation of the two statutes. See 950 Code Mass. Regs. § 51.03(5) (1979).

We note further our strong tradition of resolving voting disputes, where at all possible, in favor of the voter. "'The object of election laws is to secure the rights of duly qualified electors, and not to defeat them.' This must be borne in mind in the construction of such statutes, and the presumption is that they are enacted to prevent fraud and to secure freedom of choice, and not by technical obstructions to make the right of voting insecure." *Swift* v. *Registrars of Voters of Quincy,* 281 Mass. 271, 277 (1932), quoting from *Blackmer* v. *Hildreth,* 181 Mass. 29, 31 (1902). See *Kane* v. *Registrars of Voters of Fall River,* 328 Mass. 511, 518 (1952); *Parrott* v. *Plunkett,* 268 Mass. 202, 205 (1929).

2. *Cause of action.* In their complaint, the plaintiffs have stated a well-recognized and appropriate cause of action for damages. Massachusetts has long recognized a cause of action for damages for wrongful deprivation of the right to vote. This is true even in the absence of any claim of malice or deliberate wrongdoing on the part of election officials. *Lincoln* v. *Hapgood,* 11 Mass. 350 (1814). See *Kinneen* v. *Wells,* 144 Mass. 497 (1887); *Kilham* v. *Ward,* 2 Mass. 236 (1806), citing *Gardner* v. *Ward,* 2 Mass. 244 (1805).

Additionally, the plaintiffs cite 42 U.S.C. § 1983 (1976)[8] in their claim for relief. Claims under § 1983 are fully cognizable in our State courts. *Rzeznik* v. *Chief of Police of Southampton,* 374 Mass. 475, 484 n.8 (1978). Undeniably, the Constitution of the United States protects the rights of citizens who are qualified under State law to vote in State as well as in Federal elections. *Reynolds* v. *Sims,* 377 U.S. 533, 554 (1964). Without commenting on the merits of the contention, we cannot say that the plaintiffs' allegation of the defendants' systematic and wilful violation of two election laws, resulting in the deprivation of the plaintiffs' right to vote, fails to state a cause of action under § 1983.[9] See *Griffin* v. *Burns,* 570 F.2d 1065 (1st Cir. 1978); *Williams* v. *Sclafani,* 444 F. Supp. 906 (S.D.N.Y.), aff'd sub nom. *Williams* v. *Velez,* 580 F.2d 1046 (2d Cir. 1978); *Ury* v.

---

[8] This section states: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

[9] We note that the comity considerations underscoring the hesitation of a Federal court to invalidate a State election under § 1983 are not present here. See, e.g., *Gamza* v. *Aguirre,* 619 F.2d 449, 453-454 (5th Cir. 1980). We stress also that the plaintiffs are seeking personal damages, and declaratory and injunctive relief, not invalidation of the elections in question. *Id.* at 454 n.5. Cf. *Ball* v. *Brown,* 450 F. Supp. 4, 9 (N.D. Ohio 1977) (declaratory and injunctive relief granted, court noting fact that voting statute is constitutionally valid does not prevent court from inquiring as to whether statute is being properly implemented).

*Santee,* 303 F. Supp. 119 (N.D. Ill. 1969). Cf. *Young* v. *Gardner,* 497 F. Supp. 396 (D.N.H. 1980).

The plaintiffs are entitled to an opportunity to prove the allegations which support their claims.

3. *Actual controversy.* In order for a court to entertain a petition for declaratory relief, an "actual controversy" must appear on the pleadings. G. L. c. 231A, § 1. A case should not be dismissed at the pleadings stage simply because the judge does not agree with the proposition for which the plaintiff contends. See *Johnson* v. *Framingham,* 354 Mass. 750, 754 (1968). Instead, an appropriate decree should be entered. *Dukes County* v. *New Bedford, Woods Hole, Martha's Vineyard & Nantucket S.S. Auth.,* 333 Mass. 405, 406 (1956).

Assuming that a plaintiff has proper standing to bring the action, a dispute over an official interpretation of a statute constitutes a justiciable controversy for purposes of declaratory relief. *Massachusetts Ass'n of Independent Ins. Agents & Brokers, Inc.* v. *Commissioner of Ins.,* 373 Mass. 290, 293 (1977). Clearly our conclusion that the plaintiffs in this case have stated a claim sufficient to withstand a motion to dismiss disposes of the judge's holding that the complaint presented no "actual controversy."

The judge's implicit finding that reregistration by two of the named plaintiffs rendered the case moot is incorrect. The fact that two of the plaintiffs had reregistered did not insulate them from the jeopardy of being similarly injured in future elections so long as the defendants' practices remain unchanged. Moreover, members of the proposed class are by definition not currently on the voting list, and hence not subject to any claims of mootness. "During the interim between the plaintiff's assertion that she brought the suit in a representative capacity and the court's certification or refusal to certify the class, the judge should [treat] the suit as a class suit for the purpose of dismissal or compromise." *Wolf* v. *Commissioner of Pub. Welfare,* 367 Mass. 293, 298 (1975).

The defendants also argue that the plaintiffs' refusal to reregister to vote prior to commencing litigation constitutes

a failure to exhaust an administrative remedy. Hence, the defendants assert that the plaintiffs are barred from seeking judicial relief. The argument fails in three respects. First, the plaintiffs' failure to reregister has no bearing on their claim for damages for denial of their right to vote in past elections. Second, the defendants' contention does not address the plaintiff Jenkins' claim, based on his subsequent refusal to reregister, that an improperly dropped voter should not have to reregister. Third, the argument ignores the claims of the class members.

The defendants also argued, for the first time at oral argument, that the plaintiffs failed to exhaust other statutory remedies: restoration of their names to the annual register of voters pursuant to G. L. c. 51, §§ 35, 38, and 55.[10] However, even assuming, without deciding, that G. L. c. 51, §§ 35, 38, and 55, and not certification under § 59, state the appropriate procedure for election day restoration to the voting list, the defendants' argument fails. The complaint alleges that the defendants made no remedy available to the named plaintiffs on election day. We will not burden the fundamental right to vote by requiring voters to cite a particular statute — § 35, for example, rather than § 59 — in order to exercise that right. The case is remanded to the Superior Court for action consistent with this opinion.

*Judgment reversed.*

---

[10] These sections allow the names of dropped voters to be restored to the annual register. Section 35 explicitly states that registrars "shall" restore such names "at any time up to and including the day of the next primary or election."