RICHARD CEPULONIS & another[1] *vs.* SECRETARY
OF THE COMMONWEALTH & others.[2]

Norfolk.   March 9, 1983. — August 16, 1983.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & O'CONNOR, JJ.

*Domicil.   Elections.   Prisoner.*

Prison inmates who challenged the constitutionality of G. L. c. 51, §§ 42-
47B, and c. 54, were entitled to a declaration that prisoners domiciled
in Massachusetts who are unable to register to vote by reason of their
incarceration must be provided with an opportunity to register to vote
in State elections, and, thus, to the extent that any provisions of G. L.
cc. 51 and 54 prevent prisoners domiciled in Massachusetts from so
registering, such provisions violate the Massachusetts Constitution.
[932-937]

CIVIL ACTION commenced in the Superior Court Depart-
ment on August 11, 1982.

The case was heard by *Kelley*, J.

The Supreme Judicial Court granted a request for direct
appellate review.

*David C. Casey & Kenneth J. King* for the plaintiffs.

*Paul R. Matthews*, Assistant Attorney General, for Secre-
tary of the Commonwealth.

*Verne W. Vance, Jr., Martha E. McEntee & Richard d'A.
Belin*, for Civil Liberties Union of Massachusetts & another,
amici curiae, submitted a brief.

---

[1] The other named plaintiff is Kevin Murphy.  The case was dismissed
as to another plaintiff, Frank Soffen.

[2] The other defendants are the chairman of the election commissioners
for the city of Boston and the registrars of voters of the city of Worcester.
The latter two defendants were sued individually and on behalf of the
election commissioners and the city and town clerks of the Commonwealth.
The action was dismissed as to the Attorney General and as to the town
clerk of Ludlow.

ABRAMS, J.   At issue is the right of prisoners, incarcerated in Massachusetts, to register to vote in State elections by absentee ballot.   Relying principally on art. 3 of the Amendments to the Constitution of the Commonwealth,[3] the plaintiffs, two long-term prisoners at the Massachusetts Correctional Institution, Walpole, commenced this action challenging G. L. c. 51, §§ 42-47B, and G. L. c. 54.   The prisoners claim that, due to their incarceration, they cannot register to vote, and thus they are denied the right to vote.

The plaintiffs requested that a class of prisoners be certified, and that declaratory and injunctive relief be granted so that prisoners could participate in the November 2, 1982, State elections.   The judge denied injunctive relief and declined to certify the class.   The judge declared that prisoners who have failed to register prior to their incarceration, or who are not incarcerated in the municipality of their domicil, could not register to vote by absentee ballot because they must register to vote in person.[4]   See G. L. c. 51, § 42.  The plaintiffs appealed.   We granted the plaintiffs' application for direct appellate review.   We conclude that the

---

[3] Article 3 of the Amendments to the Massachusetts Constitution, as amended through art. 100 of the Amendments, reads as follows:   "Every citizen of eighteen years of age and upwards, excepting persons under guardianship and persons temporarily or permanently disqualified by law because of corrupt practices in respect to elections who shall have resided within the town or district in which he may claim a right to vote, six calendar months next preceding any election of Governor, Lieutenant Governor, Senators or Representatives, shall have a right to vote in such election of Governor, Lieutenant Governor, Senators and Representatives; and no other person shall be entitled to vote in such election." See arts. 1-9 of the Massachusetts Declaration of Rights.

[4] After the Superior Court judge denied relief, the plaintiffs requested an immediate review of the decision.   This court denied that request on October 15, 1982.   A single justice denied the plaintiffs' motion for an injunction pending appeal on October 21, 1982.   Several days later, the plaintiffs filed a motion for injunctive relief with Justice Brennan of the United States Supreme Court for immediate implementation of an absentee voter registration process prior to the November 2, 1982, Massachusetts general election.   Justice Brennan denied the motion without prejudice, and Justice Stevens referred the matter to the full bench of the United States Supreme Court, which denied the plaintiffs' request that the State be ordered to allow prisoners to participate in the November 2, 1982, election.

plaintiffs are entitled to a declaration that prisoners domiciled in Massachusetts who are unable to register to vote by reason of their incarceration must be provided with an opportunity to register to vote.

We summarize the facts. The plaintiff, Richard Cepulonis, is serving a sentence of from fifty-eight to eighty-two years at M.C.I., Walpole, and will be eligible for parole in 1997. He has never registered to vote in any city or town. Kevin Murphy, the other plaintiff, is serving a sentence of from fifteen to twenty years and will be eligible for parole in 1985. He, too, has never registered as a voter.

In August, 1982, both plaintiffs attempted to register to vote. Cepulonis communicated with the city clerk of Worcester, claiming Worcester as his domicil. Murphy communicated with similar authorities in Boston. Officials in both cities refused to register them on the grounds that no absentee voter registration process is available in Massachusetts, and that they may not vote by absentee ballot without registering in person. The plaintiffs then instituted this action, claiming that their inability to register creates an unconstitutional deprivation of their right to vote in State elections.[5]

The narrow issue raised by the plaintiffs is whether the Constitution of the Commonwealth requires that a registration procedure be provided for prisoners domiciled in Massachusetts so that they can register to vote in State elections even though they are incarcerated.[6] In reviewing the plaintiffs' constitutional claim, we bear in mind that voting statutes may not be interpreted so as "to defeat or impair the right of voting, but rather [must] facilitate and secure the exercise of that right." *Kinneen* v. *Wells,* 144 Mass. 497, 501 (1887). See *Santana* v. *Registrars of Voters of Worces-*

---

[5] The States regulate all elections except those for President and Vice President. In presidential elections, Congress has provided an absentee registration procedure. See 42 U.S.C. § 1973aa-1(f) (1976).

[6] A State may, without violating the Federal Constitution, disenfranchise persons convicted of crimes and deprive them of the right to vote in State elections. *Richardson* v. *Ramirez,* 418 U.S. 24 (1974). Massachusetts has not chosen to do so.

*ter*, 384 Mass. 487, 491 (1981); *Swift* v. *Registrars of Voters of Quincy*, 281 Mass. 271, 277 (1932). Restrictions on the right to vote are to be read narrowly. See *Boyd* v. *Registrars of Voters of Belchertown*, 368 Mass. 631, 633 (1975). "[V]oting disputes [are resolved], where at all possible, in favor of the voter." *Santana* v. *Registrars of Voters of Worcester, supra.* The plaintiffs assert that in the light of these principles the Commonwealth is required to establish a registration procedure within the applicable statutory time limitations for those prisoners who are domiciled in Massachusetts and who will be incarcerated on the date of the State elections and want to vote by absentee ballot. We agree.

"The purpose of the Declaration of Rights was to announce great and fundamental principles, to govern the action of those who make and those who administer the law . . . ." *Foster* v. *Morse*, 132 Mass. 354, 355 (1882). We, therefore, review the statutory scheme mindful that "[t]he manifest object of the Declaration of Rights was, to give the most explicit and abiding sanction to some of the general principles, supposed to be essential to the maintenance of free government, for the general guidance and regulation, as well of the legislature as of the people." *Commonwealth* v. *Kneeland*, 20 Pick. 206, 219 (1838). Relying on the Constitution of the Commonwealth, we have said that "[e]ach inmate of a Massachusetts correctional institution who is a duly qualified, registered voter in a Massachusetts municipality has the right under the Constitution of the Commonwealth to vote in State elections." *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152, 161 (1978).

We turn to the constitutional and statutory scheme concerning absentee ballots. In 1917, art. 45 of the Amendments to the Massachusetts Constitution was adopted, giving the Legislature the power to provide for voting by absentee ballot for all qualified voters unable to vote in person due to absence from their domicils. Through the years the Legislature has sought to preserve and extend the right to vote by the use of absentee ballots. The Legislature first extended

absentee ballots to the military, St. 1918, c. 293, c. 295, and passed a general absentee ballot statute the following year, St. 1919, c. 289. Article 76 superseded art. 45 of the Amendments to the Constitution in 1944, permitting the Legislature to extend absentee voting to persons unable to vote by reason of their physical disabilities, which the Legislature implemented. St. 1945, c. 466, § 1. The absentee ballot has also been provided to voters unable to vote in person by reason of their religious beliefs. See St. 1977, c. 426. Thus, the ability to vote by absentee ballot has been expanded since its inception. See generally G. L. c. 54, § 86.[7] Massachusetts follows a clear policy of facilitating voting by every eligible voter. See *Batchelder* v. *Allied Stores Int'l, Inc.*, 388 Mass. 83, 91 (1983) (because of the importance of the electoral process, congressional candidate allowed to obtain signatures at private shopping mall as a matter of State, not Federal, constitutional law).

The Commonwealth's statutory scheme implementing the right to vote by absentee ballot requires voter registration by affidavit in person. G. L. c. 51, § 42. No provision is made in G. L. c. 51 for registrars to visit potential voters, except in a few specifically delineated situations. The registrars must visit a physically disabled person who requests such a visit in writing, G. L. c. 51, § 42A, and the registrars must hold registration sessions in local schools, places of employment, hospitals and other gathering places within the town upon petition. G. L. c. 51, §§ 42B, 42C. Registration sessions may also be held at regional high schools, colleges, or universities anywhere in the Commonwealth, where there are persons entitled to be registered in that city or town. G. L. c. 51, § 42D. Finally, "Federal service personnel," who are otherwise qualified to vote in the district,

---

[7] General Laws c. 54, § 86, prohibits the absentee ballot to voters in penal institutions. An early claim in this case, by one of the original plaintiffs, Frank Soffen, challenged that provision and asserted the right of properly registered inmates to vote by absentee ballot. The claim was abandoned. The Commonwealth no longer disputes the right of prisoners who are registered voters to use absentee ballots.

may obtain an absentee ballot without registering in person. G. L. c. 54, §§ 103B, 103C. These include primarily members of the United States armed forces or merchant marine and their families, and United States citizens temporarily residing outside the territorial limits of the United States.

Under this statutory framework, a prisoner incarcerated in a municipality other than his or her domicil who has not previously registered to vote is not able to register while in prison. It is settled that a prisoner whose domicil happens to be the municipality of the prison may register under G. L. c. 51, § 42B. However, a prisoner domiciled elsewhere cannot automatically change his or her domicil to the situs of the prison, but may only rebut the presumption that the town where the prison is located is not his or her domicil. *Dane* v. *Registrars of Voters of Concord, supra* at 165. A prisoner's ability to rebut that presumption is extremely limited. See *Ramos* v. *Registrars of Voters of Norfolk,* 374 Mass. 176 (1978) (registration of only two of 621 prisoners in town of imprisonment upheld). Many prisoners are unable to register to vote, and thus are denied the right to vote. By preventing the registration of prisoners, the Commonwealth is abridging their right to vote in contravention of the Constitution of the Commonwealth, including the Declaration of Rights.[8]

Recognizing that, when it defends the constitutionality of a statute impinging on fundamental rights, "the State must demonstrate affirmatively that the challenged provision promotes a compelling State interest which could not be achieved in any less restrictive manner," *Massachusetts Pub. Interest Research Group* v. *Secretary of the Commonwealth,* 375 Mass. 85, 93 (1978), the defendants claim that the current registration scheme is based on the Commonwealth's interest in preventing voter fraud.[9] There is, how-

---

[8] In its decisions, the Supreme Court of the United States also has recognized that registration is essential to the voters' ability to exercise the franchise. See *O'Brien* v. *Skinner,* 414 U.S. 524, 530 (1974); *Goosby* v. *Osser,* 409 U.S. 512 (1973); *Dunn* v. *Blumstein,* 405 U.S. 330 (1972).

[9] The Commonwealth correctly does not argue that prisoners should be denied the franchise based on the possible content of their vote. See

ever, no evidence that a statutory procedure could not be enacted which would guard against voter fraud while permitting the registration of prisoners.[10]  A number of States have enacted statutes permitting absentee registration of prisoners.  See, e.g., Me. Rev. Stat. Ann. tit. 21, §§ 1-1, 1251 et seq. (1983) (permits some or all prisoners to register); N.Y. Elec. Law § 8-400 (McKinney 1978 & Supp. 1982) (same); Vt. Stat. Ann. tit. 17, §§ 2122, 2145 (Supp. 1982) (same).  See also 42 U.S.C. § 1973aa-1(f) (1976) (absentee registration procedures available); Ga. Code Ann., § 34-619 (1980 & Supp. 1982) (same); Pa. Stat. Ann. tit. 25, § 951-18-1 (Purdon 1963 & Supp. 1983) (same).

---

*Cipriano* v. *Houma,* 395 U.S. 701, 705-706 (1969); *Carrington* v. *Rash,* 380 U.S. 89, 94 (1965).

[10] The Commonwealth could place prisoner registration entirely in the hands of the office of the State Secretary rather than in the hands of local authorities.  If it chooses to use the current system, the Commonwealth could require local registrars to visit prisons in the same way they travel to regional schools to register students, see G. L. c. 51, § 42D, or each prisoner could be transported to the town he claims as his domicil in order to register.  A combination of both methods, depending on cost and effectiveness, also could be used.  For example, if a large number of a municipality's residents are incarcerated together in a prison located outside the municipality, its registrars could travel to that prison, and the municipality could use an absentee process which could include an interview with a public official or employee in those prisons holding fewer of the municipality's domiciliaries.  Any of these methods, or a combination of them, could include some face-to-face questioning which the State claims is essential to prevent voter fraud.

The Commonwealth could permit prisoners to register by an absentee process or to vote in the same manner as Federal service personnel.  See G. L. c. 54, §§ 103B, 103C.  While the absentee ballot process would not give the registrars a chance for an in-person interview, more exhaustive information than is usually requested could be required to prevent fraud and to establish each prisoner's domicil.  Such information could include past addresses, prior voter registration, licenses, bank accounts, schools attended, past employment, family addresses, court, probation, and correction records, and the like.  The prisoners are in the custody of the Commonwealth, and the Legislature could provide for local or State police to verify the identity of the prisoner and the claim of domicil.

Once a registration process designed to prevent fraud is enacted, the notary requirement and other procedures surrounding the absentee ballot process ensure the integrity of the election.  See *McCavitt* v. *Registrars of Voters of Brockton,* 385 Mass. 833, 843 (1982).

Since it is possible to have a registration process for absentee ballots which protects against fraud and which ensures the integrity of the ballot, there is no basis for disenfranchising prisoners by failing to provide them with some form of registration procedure. The current rule results in a totally arbitrary loss of the right to vote for some prisoners, but not others. For example, those prisoners incarcerated in the municipality of their domicil are able to register, and thus to vote, while prisoners from a neighboring municipality may not. Prisoners who reached their majority and have registered prior to entering prison may vote, while those prisoners who reach majority in prison, or who previously were uninterested in exercising their right to vote, may not.

The fact that for some prisoners there was once an opportunity to register, and they failed to do so, does not in our view support an absentee ballot system that has the effect of disenfranchising a group of prospective voters for long periods of time. *Rosario* v. *Rockefeller*, 410 U.S. 752 (1973) (delayed enrollment statute), relied on by the defendants, is not on point. There, the plaintiffs failed to register before a statutory deadline, and could not vote in the next primary. The time limit in that case did not absolutely disenfranchise voters or deprive them of the right to vote for a lengthy period. *Id.* at 757. Cf. *Kusper* v. *Pontikes*, 414 U.S. 51 (1973) (twenty-three month period before a person could change party affiliation held too restrictive and hence unconstitutional).

We conclude that a judgment should be entered declaring that a prisoner domiciled in Massachusetts who is unable to register to vote while in prison must be given the means to vote in State elections. Thus, to the extent that G. L. c. 51 and c. 54 prevent prisoners domiciled in Massachusetts from registering to vote, they are unconstitutional. See *Bowe* v. *Secretary of the Commonwealth*, 320 Mass. 230, 243-244 (1946).

We refrain from ordering affirmative relief. Legislation providing for an absentee registration process "is primarily a matter for legislative consideration and determination, and

. . . judicial relief becomes appropriate only when a legislature fails to [provide that process] according to [State] constitutional requisites in a timely fashion after having had an adequate opportunity to do so." *Reynolds* v. *Sims*, 377 U.S. 533, 586 (1964).

We leave open the question whether the particular plaintiffs are qualified to register in their claimed domicils. See *Ramos* v. *Registrars of Voters of Norfolk*, 374 Mass. 176 (1978); *Dane* v. *Registrars of Voters of Concord*, 374 Mass. 152 (1978). That question should be decided only after a procedure for prisoner registration has been established by the Legislature.

The judgment in the Superior Court is reversed, and a new judgment is to be entered declaring the rights of the parties consistent with this opinion.

*So ordered.*