Flannery, J.
Memorandum and Order on Plaintiffs Motion to Amend the Judgment[3]
In 1990, while inmates of the Massachusetts correctional system, the plaintiffs, William Manor and Joseph Matz, both received severe disciplinary sanctions for wearing handmade leather medallions around their necks symbolizing their support for the African National Congress (“ANC”). The plaintiffs then commenced suit seeking declaratory and injunctive relief to expunge their disciplinary convictions and to secure their right to openly display ANC medallions.
The case came before this court on cross motions for summary judgment. Manor v. Rakiey, Civ. Action No. 90-6357 (Suffolk Super. Ct., June 24, 1991) (Flannery, J.). In allowing the plaintiffs’ motion for summary judgment,[4] this court not only held that the property regulation at issue did not prohibit the plaintiffs’ actions, id. at 6, but also that the plaintiffs were “entitled, under Article 16 of the Massachusetts Constitution, to wear African National Congress medallions as necklaces.” Id. at 12.
The defendants appealed and the Supreme Judicial Court transferred the case on its own motion. The Court remanded the case to the Superior Court “for a declaration that the regulations [did] not prohibit inmates from wearing African National Congress medallion necklaces,” but declined to reach the constitutional issue. Manor v. Superintendent, Massachusetts Correctional Institution, 416 Mass. 820, 824 (1994). During the pendency of the appeal, however, the Department of Corrections amended its disciplinary regulation to prohibit the wearing of ANC medallions.
Plaintiff William Manor now moves to amend this court’s prior judgment, under Mass.R.Civ.P. 59 and 60, seeking a declaration that the amended disciplinary regulation violates his rights under art. 16 of the Massachusetts Constitution and the First and Fourteenth Amendments to the United States Constitution. For the reasons herein stated, the plaintiffs motion to amend the judgment is allowed; it is decreed that the defendants may not prohibit the wearing of ANC medallions under both state and federal constitutions; and it is further adjudged that 103 Code Mass. Regs. §430.24(31) is unconstitutionally vague and overbroad.
BACKGROUND
The material facts may be summarized as follows. During the evening of May 22, 1990, plaintiff William Manor (“Manor”) wore a handmade ANC medallion in the shape of the African continent strung from a shoelace around his neck. Manor wore the medallion in an effort to express his racial and cultural heritage as an African-American and to show support for Nelson Mandela and the anti-apartheid struggle in South Africa.[5] A correction officer stopped Manor on his way to dinner, informed him that the ANC medallion was contraband, and ordered its removal. Manor refused, believing that this was a crucial time in the struggle for freedom in South Africa and that he had a right to express his political views.
Although Manor was permitted to wear the medallion to dinner without incident, guards placed Manor in the “awaiting action” block after dinner for his refusal to remove the ANC medallion.[6] There, Manor continued to wear the ANC medallion as a means of expression. Manor was subsequently charged with several disciplinary infractions.[7] A disciplinary board found Manor guilty and sanctioned him to thirty days in isolation. Manor served his thirty days after his appeal was denied.
The next day another correction officer stopped plaintiff Joseph Matz (“Matz”) for wearing his ANC medallion. Matz refused to place his ANC medallion inside his shirt when asked. Matz later received a disciplinary report charging him with nine separate offenses arising out of the incident. At his disciplinary hearing, Matz explained that he wore the ANC medallion to demonstrate his pride in his African heritage and his solidarity in the struggle against oppression in both South Africa and the United States. A disci *507 plinary board found Matz guilty of, inter alia, possessing an unauthorized item and participating in an unauthorized group demonstration, sanctioning him to thirty days isolation. Matz served his thirty-day sentence after the denial of his appeal.
The Department of Correction (the “Department”) offered no evidence of any disruption flowing from the wearing of ANC medallions at either disciplinary hearing.
In October 1990, Manor and Matz filed suit against the defendants seeking the reversal of the disciplinary board’s findings, contending that the medallions were not proscribed by the prison regulations. Additionally, the plaintiffs sought a declaration of their right, under art. 16 of the Massachusetts Declaration of Rights and the First and Fourteenth Amendments to the United States Constitution, to wear the ANC medallions openly. The plaintiffs also sought an injunction against future prohibitions on their right to openly wear the ANC medallions.
On cross motions for summary judgment, this court allowed the plaintiffs’ motion in June 1991. The court found that the regulation at issue did not proscribe the wearing of the ANC medallions. The court also declared that the plaintiffs “are entitled, under Article 16 of the Massachusetts Constitution, to wear African National Congress medallions as necklaces.” Manor v. Rakiey, Civ. Action No. 90-6357 (Suffolk Super. Ct., June 24, 1991) (Flannery, J.) at 12. Accordingly, the court reversed the findings of the disciplinary board and expunged the plaintiffs’ records insofar as they pertained to the wearing of the ANC medallions. Id. at 12-13.
The defendants appealed and the Supreme Judicial Court took the case directly on its own motion. During the pendency of the appeal, the defendants notified this court that it had “updated” its disciplinary regulation to prohibit the wearing of the medallions.[8] In January 1994, the Supreme Judicial Court agreed that the property regulations under which Manor and Matz received sanctions did not prohibit their actions. Manor v. Superintendent, Massachusetts Correctional Institution, 416 Mass. at 824. The Court, however, declined to reach the constitutional issues and remanded the case to the Superior Court. Id. The new regulation was not addressed.
Manor then sought a rehearing, claiming that the new regulation would prohibit him from exercising his free speech rights. The amended disciplinary regulation makes it a disciplinary offense to:
[w]ear[ ] or display! ] colors or any type of emblem, insignia or logo suggesting possible membership or affiliation with a gang, group, party or other association whenever such wearing or display may, in the opinion of the superintendent, pose a threat to the security, good order and safety of the institution.
103 Code Mass. Regs. §430.24(31). The Court denied rehearing on April 26, 1994, and judgment after rescript was entered on May 10, 1994, in the Superior Court.
Manor remains in the custody of the Department and is currently confined at Old Colony Correctional Center. He now moves to amend the judgment entered in the Superior Court to prohibit the enforcement of the new regulation. In support of his motion, Manor offers the affidavit of Paul Rakiey wherein he admits that the wearing of ANC medallions would violate the new disciplinary regulation. Aff. Paul Rakiey, para. 4. Manor contends that because the defendants have made clear that the wearing of the ANC medallions is prohibited by the new disciplinary regulation, it violates both art. 16 of the Massachusetts Declaration of Rights and the First and Fourteenth Amendments to the United States Constitution. Pursuant to G.L.c. 231 A, §1, Manor seeks a declaration that the new regulation violates both federal and state constitutions.
In opposition, the defendants contend that while the amended regulation restricts inmates’ freedom of expression, those restrictions are reasonably related to the legitimate penological interests of maintaining institutional security, order, and safety. Furthermore, the defendants assert that since Manor can send letters of support and monetary donations to the ANC cause, alternative means exist for Manor to express his pride in his racial and cultural heritage and show support for the majority in South Africa. The defendants also contend that the wearing of ANC medallions constitutes a threat to institutional safely and security, given the volatile nature of prisons and the disruptive effect that will result. Finally, the defendants claim that there is no ready alternative to prohibiting the wearing of “colors” and that the regulation is completely neutral in content.
DISCUSSION
This court held in its earlier decision that the plaintiffs “are entitled, under Article 16 of the Massachusetts Constitution, to wear African National Congress medallions as necklaces.” Manor v. Rakiey, Civ. Action No. 90-6357 (Suffolk Super. Ct., June 24, 1991) (Flannery, J.) at 12. Because the Supreme Judicial Court declined to reach the constitutional issue, Manor v. Superintendent, Massachusetts Correctional Institution, 416 Mass. at 824, this court’s prior judgment that the Department can not constitutionally prohibit the wearing of ANC medallions remains in effect. To the extent that it is necessary, however, this court reiterates its prior holding. For the reasons stated below, this court further holds that the new regulation violates both state and federal constitutions and is unconstitutionally vague and overbroad. I first turn to the protection afforded under our state constitution.
Courts have traditionally adopted a policy of deference to the decisions of prison administrators: e.g., Block v. Rutherford, 468 U.S. 576, 588, 591 (1984); Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 126 (1977); Procunier v. Martinez, 416 U.S. 396, 404 (1974); see also Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983). This is *508 particularly so where the policies are related to the preservation of internal order and discipline and the maintenance of institutional security. Champagne v. Commissioner of Correction, 395 Mass. 382, 287 (1985). “But a policy of judicial restraint cannot encompass any failure to take cognizance of valid constitutional claims . . . When a prison regulation or practice offends a fundamental constitutional guarantee . . . courts will discharge their duty to protect constitutional rights.” Procunier v. Martinez, 416 U.S. 396, 405 (1974). The Commonwealth’s Declaration of Rights “preceded and is independent of the Constitution of the United States.” Commonwealth v. Upton, 394 Mass. 363, 372 (1985).The Supreme Judicial Court has applied this principle to self-incrimination, the right to privacy, and the death penalty. See, e.g., Attorney General v. Colleton, 387 Mass. 790 (1982) (self-incrimination); Moe v. Secretary of Administration and Finance, 382 Mass. 629 (1981) (right to privacy); District Attorney v. Watson, 381 Mass. 648 (1980) (death penalty). Article 16 of the Massachusetts Declaration of Rights which guarantees that “[t]he right to free speech shall not be abridged,” Mass. Dec. of Rts. art. XVI, has likewise been interpreted to provide greater protection for freedom of expression than the First Amendment. Compare Commonwealth v. Sees, 374 Mass. 532 (1978) (art. 16 protects semi-nude dancing), with Doran v. Salem Inn, Inc., 422 U.S. 922, 932-33 (1975) (semi-nude dancing not protected under First Amendment). Accord Batchelder v. Allied Stores Int'l, Inc., 388 Mass. 83 (1983), and PruneYard Shopping Center v. Robins, 447 U.S. 74, 80-81 (1980). Thus, art. 16 may well protect speech which is not clearly protected by the First Amendment. Moreover, the Supreme Judicial Court has also recognized that the Constitution of the Commonwealth grants rights to prisoners which exceed the protections guaranteed in the Bill of Rights. Compare Cepulonis v. Secretary of the Commonwealth, 389 Mass. 930, 937 (1983) (inmates have right to register to vote in state elections), and Dane v. Board of Registrars of Voters of Concord, 374 Mass. 152, 161 (1978) (inmates have voting rights), with Richardson v. Ramiriz, 418 U.S. 24 (1974) (prisoners have no federal constitutional right to vote).
Conduct designed to express ideas is protected as symbolic speech under art. 16. See Commonwealth v. Sees, 374 Mass. 532, 537 (1978) (holding art. 16 protects semi-nude dancing). Accord Texas v. Johnson, 491 U.S. 397, 404 (1989) (First Amendment protects conduct which is designed “to convey a particularized message... [where] the likelihood [is] great that the message would be understood by those who viewed it”). In the instant case, the plaintiff wishes to wear an ANC medallion as an expression of his racial and cultural heritage. Since such conduct expresses ideas, it is symbolic speech within the purview of art. 16. Commonwealth v. Sees, 374 Mass. at 537; accord Texas v. Johnson, 491 U.S. at 404 (burning of flag expressive conduct); Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 505 (1969) (wearing black armbands to protest United States’ involvement in Vietnam described as expressive conduct within purview of First Amendment).
The defendants claim that the right of the plaintiff to engage in such protected activity must give way where its prohibition is “reasonably related to legitimate penological interests.” Turner v. Safley, 482 U.S. 78, 89 (1987). While the Turner Court dealt with federal constitutional rights, the plaintiff claims his conduct is protected under the state constitution as well. Since the Massachusetts Constitution and art. 16 provide broad protection for freedom of speech, evaluating the prison regulation at issue under the Turner “reasonable relation” standard of review is inappropriate. Rather, a higher standard of scrutiny must be applied to the regulation at issue. Commonwealth v. A Juvenile, 368 Mass. 580, 584 (1975) (any regulation “which regulates speech requires the strictest of our scrutiny because ‘the line between speech unconditionally guaranteed and speech which may legitimately be regulated, suppressed, or punished is finely drawn’ ”), quoting Speiser v. Randall, 357 U.S. 513, 525 (1958). To be valid, the regulation at issue: (1) must further an important or substantial governmental interest unrelated to the suppression of expression; and (2) the limitation on the freedom of expression must be no greater than is essential to the protection of the particular governmental interest involved. Forsyth School for Dental Hygienists v. Board of Registration in Dentistry, 404 Mass. 211, 216 (1989), citing United States v. O’Brien, 391 U.S. 367, 377 (1968). Because this case does involve prison inmates, “it must be acknowledged that as . . . even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.” Champagne v. Commissioner of Correction, 395 Mass. 382, 287 (1985), quoting Bell v. Wolfish, 441 U.S. 520, 547 (1979).
In evaluating the present regulation under the For-syth standard but keeping in mind the central objective of the prison administration in the instant case, prohibiting inmates from wearing or displaying “colors or any type of emblem, insignia or logo suggesting possible membership or affiliation with a gang, group, party or other association” is unjustified. The regulation at issue purports to further the important and substantial governmental interest in maintaining institutional security and order. See Thornburgh v. Abbott, 490 U.S. 401, 405 (1989) (recognizing institutional security as a legitimate governmental interest). Here, however, the regulation bans all symbolic expression, “whenever such wearing or display may, in the opinion of the superintendent, pose a threat to the security, good order and safety of the institution.” 103 Code Mass. Regs. §430.24(31). The regulation fails to define or specify “a threat to the security, good order and safety of the institution.” *509 Thus, expressive conduct is subject to the superintendent’s unfettered discretion. If the superintendent deems the expressive conduct inimical to institutional security, the regulation permits its prohibition. Such decisions will invariably operate to suppress the content of speech of some inmates and allow the dissemination of ideas by others. Accordingly, the regulation “gives too much discretion to [the superintendent] to determine . . . what [expressive conduct] warrants censorship.” Champagne v. Commissioner of Correction, 395 Mass. 382, 391 (1985).
Additionally, the regulation’s limitation on inmates’ freedom of expression exceeds that necessary to preserve institutional security and order. Even according great deference to prison officials, the prohibition of ANC medallions as necklaces serves only to regulate the content of protected speech. The Department insists, however, that inmates wearing ANC medallions present a potential “gang” threat to the prison. It is of some significance that the defendants’ contention that the wearing of an ANC medallion would threaten institutional security is conjectural. Of course, considering their expertise, the defendants’ prediction is entitled to respect. However, the only empirical evidence here appears to be to the contrary. In June of 1991, this court declined to stay its order allowing the . medallions to be worn, and the defendants sought no stay from the Court of Appeals or the Supreme Judicial Court. It appears, therefore, that at least between June of 1991 and January of 1994, when the Supreme Judicial Court decided the appeal, the medallions were worn without incident. Where, as here, there is no evidence of any disruption flowing from the wearing of the ANC medallions, such expressive conduct cannot be banned in accordance with our state constitutional guarantees. See Lovell v. Superintendent, North Central Correctional Institution, 26 Mass.App.Ct. 35, 40 (1988). Accord Tinker v. Des Moines Independent Community School District, 393 U.S. at 508. Given the substantial infringement on the plaintiffs art. 16 rights, the prohibition of ANC medallions does not withstand constitutional attack under our state constitution. Compare Champagne v. Commissioner of Correction, 395 Mass. 382, 388 (1985) (noting judicial deference appropriate where policy’s infringement on First Amendment rights is insignificant).
Moreover, the regulation may even subject inmates wearing crucifixes or other religious symbols to sanctions. Such activity “suggests . . . membership or affiliation with a.. . group ... or other association.” 103 Code Mass. Regs. §430.24(31). Because the regulation grants the superintendent unbridled discretion to prohibit such expressive conduct whenever he deems it mimical to institutional security, it is unconstitutional. Champagne v. Commissioner of Correction, 395 Mass. 382, 391 (1985).
This court further holds that even under the First Amendment the new regulation does not pass constitutional muster. The First Amendment guarantees the right to free speech. U.S. Const. amend. I. The Supreme Court has often noted that the freedom of speech is not absolute. See, e.g., Roth v. United States, 354 U.S. 476, 483 (1957) (unconditional terminology of First Amendment not intended to protect every utterance); Stromberg v. California, 283 U.S. 359, 368 (1931) (state may punish those abusing freedom of speech); Gitlow v. New York, 268 U.S. 652, 66 (1923) (freedom of speech not absolute). It is axiomatic “that a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.” Lovell v. Superintendent, North Central Correctional Institution, 26 Mass.App.Ct. 35, 37 (1988), quoting Pell v. Procunier, 417 U.S. 817, 822 (1974). An inmate’s rights under the First Amendment are necessarily curtailed by “[t]he fact of confinement and the needs of the penal institution.” Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 125 (1977); accord Champagne v. Commissioner of Correction, 395 Mass. 382, 287 (1985); Price v. Johnston, 334 U.S. 266, 285 (1948) (“Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system”). Thus, “even when an institutional restriction infringes a specific constitutional guarantee, such as the First Amendment, the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.” Champagne v. Commissioner of Correction, 395 Mass. 382, 287 (1985), quoting Bell v. Wolfish, 441 U.S. at 547.
It is well established that agency regulations carry the force of law. Royce v. Commissioner of Correction, 390 Mass. 425, 427 (1983); Purity Supreme, Inc. v. Attorney General, 380 Mass. 762, 768-69 (1980). In Turner v. Safley, 482 U.S. 78, 89-91 (1987), the Supreme Court set out the standard for determining whether a prison regulation is unconstitutional. The Turner Court first required “a ‘valid rational connection’ between the prison regulation and the legitimate governmental interest put forward to justify it.” Id. at 89. Here, the Court emphasized that “the governmental objective must be a legitimate and neutral one.” Id. at 90. Restrictions which curtail inmates’ First Amendment rights must operate “in a neutral fashion, without regard to the content of the expression.” Bell v. Wolfish, 441 U.S. 520, 551 (1979); Pell v. Procunier, 417 U.S. 817, 828 (1974) . See also Thornburgh v. Abbott, 490 U.S. 401, 415-16 (1989) (distinguishing between publications on the basis of their potential implications for prison security is “neutral”); Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 134 (1977) (Court found distinction rational between Alcoholics Anonymous group which was entitled to engage in First Amendment activity and prison labor union which was not because former had been determined not to pose a threat to institutional *510 security or order). Second, alternative avenues of communication must exist for the restriction to survive constitutional scrutiny. Bell v. Wolfish, 441 U.S. at 551-52; Pell v. Procunier, 417 U.S. at 827-28 and n. 5. Where other avenues are available for the prisoners to exercise their asserted right, courts should defer to prison authorities. Turner v. Safley, 482 U.S. at 90. Third, the court must consider the impact on prison resources of allowing inmates to exercise their rights. Id. at 90. In this respect, the Court has cautioned that deference should be accorded prison officials whenever the “accommodation of an asserted right will have a significant ‘ripple effect’ on fellow inmates or on prison staff.” Id. at 90. Last, the Court indicated that “the absence of ready alternatives is evidence of the reasonableness of a prison regulation.” Thus, a reasonable relationship will not be found where an inmate “can point to an alternative that fully accommodates the prisoner’s rights at a de minimis cost to valid penological interests.” Id. at 91.
In the instant case, the defendants have failed to satisfy the Turner reasonable relationship test. The need to protect institutional security and safety is undoubtedly a legitimate governmental objective. Thornburgh v. Abbott, 490 U.S. 401, 415 (1989); Block v. Rutherford, 468 U.S. 576, 586 (1984). The regulation, however, does not operate “in a neutral fashion, without regard to the content of the expression.” Bell v. Wolfish, 441 U.S. 520, 551 (1979). In Thornburgh v. Abbott, 490 U.S. 104 (1989), the Supreme Court upheld regulations which infringed on prisoners’ First Amendment rights where the restrictions were based solely on the potential implication for prison security. Id. at 415-16. The Court described the regulations as neutral because they distinguished “between rejection of a publication ‘solely because its content is religious, philosophical, political, social or sexual, or because its content is unpopular or repugnant’ (prohibited) and rejection because the publication is detrimental to security (permitted).” Id. at 415. Moreover, the regulations provided criteria for excluding publications to which the standard of “institutional security” was applied. Id. at 416. Here, however, the regulation is directly related to the suppression of expression. It gives the superintendent unfettered discretion to prohibit any symbolic expression that he deems harmful to institutional security. Expressive conduct that is unpopular or repugnant to the superintendent or even other inmates may be prohibited as no substantive criteria guide the superintendent’s exercise of discretion. Thus, the regulation impermissibly prohibits expressive conduct based on its “likely communicative impact.” Texas v. Johnson, 397 U.S. at 411.
Moreover, the prison regulation is not rationally connected to its legitimate penological objective. At the disciplinary hearings, no evidence was offered that the ANC medallions were gang-related or posed any threat to institutional security or order. The regulation and its post hoc justification cannot be reconciled with the testimony given at the plaintiffs’ disciplinary hearings or with the defendants failure to seek a stay from this court’s decision of June 1991. Compare Turner v. Safley, 482 U.S. 78, 98 (1987) (finding nothing in record to suggest that marriage regulation was reasonably related to security concern), and Lovell v. Superintendent North Central Correctional Institution, 26 Mass.App.Ct. 35, 40 (1988), with Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 128 (1977) (burden not on prison officials to affirmatively demonstrate that First Amendment activity would constitute a threat to institutional security or order). Where, as here, the regulation “provides little direction to those officials . . . charged with its enforcement,” it is unconstitutional. See Champagne v. Commissioner of Correction, 395 Mass. 382, 392 (1985).
Next, inmates do not have alternative means of exercising their First Amendment rights. Defendant’s argument that the plaintiff may send letters and money to demonstrate his support for the majority in South Africa and to express his racial and cultural heritage is without merit. The plaintiff wishes to engage in symbolic expression — to wear a medallion which symbolizes his racial and cultural pride and support for a particular political cause. Sending letters and monetary support is clearly distinct. Such activity does not enable the plaintiff to openly express his political, cultural, and racial beliefs, and therefore does not commensurate with the direct expression he wishes to display. But see Thornburgh v. Abbott, 490 U.S. 401, 418 (1989) (alternative means met where other means of expression remain available).[9]
Additionally, the defendants have offered no evidence of any disruptive effect caused by the wearing of ANC medallions. See Turner v. Safley, 482 U.S. 78, 98 (1987) (finding nothing in record to suggest that marriage regulation was reasonably related to security concern). Instead, they offer unsupported hypothetical scenarios to buttress their argument. This court is mindful, however, that “responsible prison officials must be permitted to take reasonable steps to forestall” a threat to institutional security, “and they must be permitted to act before the time when they can compile a dossier on the eve of a riot.” Jones v. North Carolina Prisoners’ Labor Union, Inc., 433 U.S. 119, 132-33 (1977). But “undifferentiated fear or apprehension of disturbance is not enough to overcome the right of freedom of expression.” Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 508 (1969). Where, as here, the plaintiff has demonstrated the lack of a rational connection between the maintenance of institutional security and the prohibition of all symbolic speech, deference to prison officials is not warranted. See Lovell v. Superintendent North Central Correctional Institution, 26 Mass.App.Ct. at 40.
The availability of alternatives to the outright prohibition on symbolic speech seals the new regulation’s fate. Prison officials could perhaps allow inmates to *511 wear ANC medallions or other logos, emblems or insignias in certain places and at certain times when threats to institutional security would not be an issue. That is to say, even if a threat to institutional security were shown to exist, there is no showing that a balance between effective expression and protection of institutional security can not be struck. Prohibiting the plaintiff from wearing an ANC medallion altogether is clearly an exaggerated response rendering the new disciplinary regulation unreasonable. See Thornburgh v. Abbott, 490 U.S. 401, 419 (1989) (“when prison officials are able to demonstrate that they have rejected a less restrictive alternative because of reasonably founded fears that it will lead to greater harm, they succeed in demonstrating that the alternative they in fact selected was not an ‘exaggerated response’ ”). Moreover, the regulation prohibits all symbolic expression that the superintendent deems a security risk. Such a broad exclusion to achieve consistency runs afoul of the Turner standard. See Thornburgh v. Abbott, 490 U.S. at 417 n. 15. Even under the Turner standard, the regulation does not withstand constitutional attack when pitted against the First Amendment.
Finally, this court holds that the regulation is unconstitutionally vague and overbroad. Under the void-for-vagueness doctrine, offenses must be defined with sufficient specificity to “give the person of ordinary intelligence a reasonable opportunity to know what is prohibited.” Grayned v. City of Rockford, 408 U.S. 104, 108 (1972); see also Kolender v. Lawson, 461 U.S. 352, 357 (1983) (citizens must be able to understand what constitutes prohibited conduct).[10] Some minimal guidelines which govern the statute’s enforcement are necessary. Kolender v. Lawson, 461 U.S. 352, 357-58 (1983); Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972) (explicit standards must exist to prevent arbitrary and discriminatory enforcement).
In the instant case, the new regulation lists various emblems and logos that may be prohibited, but does not place inmates on notice as to what expressive activity is prohibited. Rather, the regulation grants the superintendent unlimited discretion in determining whether the symbolic speech at issue is a security risk. Since the regulation at issue grants the superintendent unfettered discretion in determining what type of symbolic speech is prohibited, this court holds that it is void on its face. See Champagne v. Commissioner of Corrections, 395 Mass. 382 (1985) (invalidating prison regulation which gave prison authorities too much discretion). Compare Thornburgh v. Abbott, 490 U.S. at 416-17 (while “detrimental to the security, good order, or discipline of the institution” was the controlling standard, regulation listed criteria to which standard applied).
Furthermore, “[a] vague statute may be overbroad if its uncertain boundaries leave open the possibility of punishment for protected conduct and thus lead citizens to avoid such protected activity in order to steer clear of the uncertain proscriptions.” Commonwealth v. A Juvenile, 368 Mass. 580, 586 (1975), quoting Grayned v. City of Rockford, 408 U.S. 104, 109 (1972). Accord Smith v. Goguen, 415 U.S. 566, 573 (1974); Herndon v. Lowry, 301 U.S. 242, 259 (1937). Where expressive conduct is involved, the regulation’s overbreadth must be real and substantial. E.g. Osborne v. Ohio, 495 U.S. 103, 112 (1990); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-01 (1984); Broadrick v. Oklahoma 413 U.S. 601, 615 (1973).
Here, the regulation is overbroad because it not only prohibits expressive activities which threaten institutional security and safety, but also precludes symbolic speech, such as the open display of ANC medallions, which has not been shown to cause turmoil within the prison environment. See Doran v. Salem Inn, Inc., 422 U.S. 922, 933 (1975) (First Amendment violated where statute prohibits both unprotected and protected speech), Lovell v. Superintendent, North Central Correctional Institution, 26 Mass.App.Ct. 35, 40 (1988) (evidence of threat to institutional security necessary where the restriction lacks a logical connection to the claimed governmental interest sought to be protected). Since the plaintiff is entitled to wear an ANC medallion under both art. 16 and the First and Fourteenth Amendments, the regulation is unconstitutionally overbroad as the threat of sanctions has deterred the plaintiffs lawful speech. E.g. Osborne v. Ohio, 495 U.S. 103, 112 (1990); Members of City Council of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 800-01 (1984); Broadrick v. Oklahoma, 413 U.S. 601, 615 (1973). Accordingly, the new regulation does not withstand constitutional scrutiny.
This court adds that, because free expression has been viewed as necessary to individual self-fulfillment and its suppression defined as an affront to man’s dignity, see David Kretzmer, Freedom of Speech and Racism, 8 Cardoza L. Rev. 445, 481 (1987) (discussing self-fulfillment value of free speech); John E. Nowak et al, Constitutional Law §16.6, at 836 (3d ed. 1986) (free speech is an aspect of individual liberty),[11] denying prisoners the right to express their political and cultural views not only thwarts the rehabilitative goal of the prison system, but hampers inmates’ reintegration into society. Accordingly, this court finds the regulation not only unconstitutional, but repugnant to the rehabilitative process.
ORDER
For the foregoing reasons, plaintiffs motion to amend the judgment is ALLOWED; it is DECREED that the plaintiff is entitled, under art. 16 of the Massachusetts Declaration of Rights and the First and Fourteenth Amendments to the United States Constitution, to wear an African National Congress medallions as a necklace; it is further AD JUDGED that 103 Code Mass. Regs. §430.24(31) in its present version is unconstitutionally vague and overbroad.

 Only plaintiff William Manor moves to amend this court’s prior judgment.

 Accordingly, the court denied the defendants’ motion for summary judgment.

 At the time of the incident, Nelson Mandela, then president of the ANC, had planned a visit to Boston for the following month.

 “Awaiting action" is an area of the prison reserved for those awaiting disciplinary action.

 The charges against Manor included: disobeying an order, failing to keep his person in accordance with rules, and attempting to participate in an unauthorized group activity. Manor v. Superintendent Massachusetts Correctional Institution, 416 Mass. 820, 822 (1994).

 The defendants sought a stay from the Superior Court which this court denied, thereby allowing the medallions to be worn. The defendants did not seek a stay from either the Court of Appeals or the Supreme Judicial Court.

 Additionally, prisoners often do not have the means to send money to political causes.

 Ahe void-for-vagueness doctrine has its underpinnings in the Due Process Clause of the Fourteenth Amendment. See Stromberg v. California, 283 U.S. 359, 369 (1931) (vague and indefinite statute repugnant to liberty guaranteed by Fourteenth Amendment).

 Various reasons have been advanced for the preferred position of speech in our constitutional scheme. These include preventing error through ignorance and enhancing the public good through enlightenment. See John Milton, Areopagitica, A Speech, for the Liberty of Unlicensed Printing to the Parliament of England (1644); John Stuart Mill, On Liberty, ch. 2 (1959) (free speech prevents ignorance and enhances public good through enlightenment). Free speech also enables the government to be responsive to the will of the people by inviting dispute. See, e.g., Terminiello v. Chicago, 337 U.S. 1, 4 (1949) (vitality of our civil and political institutions depends on free discussion); Thornhill v. Alabama, 310 U.S. 88, 95 (1940) (abridging free speech impairs power to correct government through popular government); Stromberg v. California, 283 U.S. 359, 369 (1931) (free speech allows changes in government to be made by lawful means). Finally, freedom of speech has been viewed as an essential instrument in the quest for the truth. See Bose Corp. v. Consumers Union of United States, Inc., 466 U.S. 485, 503-04 (1984) (free speech essential to common quest for truth); David Kretzmer, Freedom of Speech and Racism, 8 Cardoza L. Rev. 445, 468 (1987) (free expression is an essential instrument for reaching the truth).